**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 07-32718

NATHANIEL BLAIR DEBUSK
d/b/a THOMAS CROWN & ASSOCIATES

        Debtor

N. DAVID ROBERTS, JR.,
CHAPTER 7 TRUSTEE

        Plaintiff

v.                                            Adv. Proc. No. 08-3015

NATHANIEL BLAIR DEBUSK

        Defendant

# M E M O R A N D U M

**APPEARANCES:**    N. DAVID ROBERTS, JR., ESQ.
    119 West Summit Hill Drive
    Suite 315
    Post Office Box 2564
    Knoxville, Tennessee 37901
    Attorney for Plaintiff

    BURROUGHS COLLINS & JABALEY PLC
    Keith L. Edmiston, Esq.
    900 South Gay Street
    Suite 600
    Knoxville, Tennessee 37902
    Attorneys for Debtor/Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Chapter 7 Trustee, N. David Roberts, Jr., on January 25, 2008, objecting to the Debtor/Defendant's discharge under 11 U.S.C. § 727(a)(3), (4)(A), and (5) (2005). The trial was held on July 21, 2008. The record before the court consists of ten exhibits introduced into evidence, along with the testimony of one witness, the Defendant.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(J) (2008).

**I**

In July 2004, the Defendant began doing business as a sole proprietorship under the name of Thomas Crown & Associates, through which he engaged in contacting and selling leads over the internet to home-based businesses who were interested in furnishing products to customers provided by the Defendant. In November 2005, he began gambling over the internet, aspiring to be a professional handicapper. The Defendant testified that he obtained loans from American Finance Solutions totaling approximately $25,000.00, from First Funds in the approximate amount of $32,000.00,[1] and from Acacia Funding in the amount of $12,000.00, for a total of $69,000.00, which were used to fund both Thomas Crown & Associates and his gambling ventures. In the year preceding his bankruptcy filing, the Defendant estimated that he incurred gambling losses between $25,000.00 and $40,000.00.

---

[1] At his 2004 examination taken on October 31, 2007, the Defendant testified that he borrowed $32,000.00 from First Funds; however, the amount listed on his Schedule D is $42,364.88. *Compare* TRIAL EX. 5 at page 40, line 2 *with* COLL. TRIAL EX. 1 (Schedule F).

The Defendant filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on August 24, 2007, and the Plaintiff was appointed as Chapter 7 Trustee at that time and continues to serve in that capacity. The Defendant's first meeting of creditors was held on September 25, 2007, during which he disclosed that he had suffered gambling losses of more than $10,000.00 during the year preceding his bankruptcy filing that had not been reflected in his statements and schedules. *See* TRIAL EX. 2 at 11. Following the meeting of creditors, and after being instructed to do so by the attorney for the United States Trustee at the first meeting, the Defendant filed an Amended Statement of Financial Affairs on October 30, 2007, disclosing that he had incurred gambling losses between August 2006 and August 2007. TRIAL EX. 4. He did not list any amount for those losses. He was then examined pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure on October 31, 2007. He provided the Plaintiff with limited records concerning his gambling and business activities, testifying that he did not keep many records and that those records he had kept were lost when his computer crashed due to a virus. He also testified that the gambling services with which he was involved would not provide him with copies of records detailing his winnings and losses.

The Plaintiff filed the Complaint initiating this adversary proceeding on January 25, 2008, objecting to the Defendant's discharge on the following grounds: (1) that the Defendant failed to disclose his gambling losses in his originally filed Statement of Financial Affairs; (2) that the Defendant under-reported his expenses in his tax Schedule C and falsified his federal income tax returns for 2005 and 2006, which he then provided to the Plaintiff; (3) that the Defendant has failed to provide the Plaintiff with financial records concerning his gambling business and losses or that explain the discrepancies with his tax returns; and (4) that the Defendant has failed to satisfactorily

explain what happened to his more than $216,975.00 in income for 2005 and 2006, while incurring unsecured debt of $154,584.59.

## II

Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C. § 727, unless one of ten express limitations exist, including, as material to this adversary proceeding, the following:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> > (A) made a false oath or account; [or]
>
> . . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a).[2] These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown* (*In re Brown)*, 56 B.R. 63, 66 (Bankr. D.N.H. 1985)). Section 727(a) is liberally construed in favor of the debtor, and the party objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); FED. R. BANKR. P. 4005.

**A**

The Plaintiff first objects to the Defendant's discharge under § 727(a)(3) for failing to produce documentation "with enough information to ascertain [his] financial condition and track [his] financial dealings with substantial accuracy for a reasonable period past to present." *Wazeter v. Mich. Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D. Mich. 1997) (quoting *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (citations omitted)). This disclosure provides the trustee and creditors with sufficient information concerning a debtor's financial history and current financial affairs since "[c]reditors are not required to risk having the debtor withhold or conceal assets 'under the cover of a chaotic or incomplete set of books or records.'" *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992) (quoting *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir. 1990)). Debtors are responsible for providing sufficient financial information; the trustee and

---

[2] Chapter 7 discharge relieves "honest but unfortunate" debtors of their debts and allows them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). "Except as provided in section 523 . . ., a discharge under subsection (a) . . . discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" 11 U.S.C. § 727(b) (2005).

5

creditors are not required to investigate and acquire records. *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 353-54 (Bankr. E.D. Tenn. 2006).

Under § 727(a)(3), the Plaintiff bears the initial burden of proof that the Defendant "has failed to maintain adequate books and records and that such failure renders it impossible to discern [his] true financial condition[,]" *Christy v. Kowalski (In re Kowalski)*, 316 B.R. 596, 601 (Bankr. E.D.N.Y. 2004), and if the records are proven inadequate, the burden shifts to the Defendant to prove that the failure to maintain sufficient records was justified under the specific circumstances of his case. *Babb,* 358 B.R. at 354 (citing *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 883 (B.A.P. 6th Cir. 1999)). Intent, however, is not an element under § 727(a)(3), leaving the courts to determine the adequacy of a debtor's records on a case by case basis and giving judges broad discretion to deny discharge based upon inadequately kept books and records. *Babb*, 358 B.R. at 354 (citing *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) and *Dolin v. N. Petrochemical Co. (In re Dolin)*, 799 F.2d 251, 253 (6th Cir. 1986)).

> The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'"

*Alten*, 958 F.2d at 1230 (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979) (citations omitted)). Instead, records should be measured "against the type of books and records kept by a reasonably prudent debtor with the same occupation, financial structure, education, and experience." *Wazeter*,

209 B.R. at 227 (quoting *Wynn v. Wynn (In re Wynn)*, 205 B.R. 97, 101 (Bankr. N.D. Ohio 1997)).

Additional factors include:

> (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor.

*Kowalski*, 316 B.R. at 602 (citing *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)).

In support of his objection to discharge, the Plaintiff argues that the Defendant was unable to provide him with any records or documentation concerning his internet gambling business and that the records the Defendant did provide consisted only of tax returns for 2005 and 2006, which did not include any mention of his gambling activities, year-end business reports for 2005 and 2006 without any supporting documentation as to the expense amounts listed, copies of some bank statements and cancelled checks, and copies of some credit card billing statements.

It is clear from the record that the Defendant provided the Plaintiff with bank statements as requested; however, most of the records concerning the Defendant's business ventures – both Thomas Crown & Associates and his internet gambling – were not produced, and the Plaintiff has met his burden of proof that he received inadequate documentation from the Defendant. With respect to records for marketing orders that he received in connection with Thomas Crown & Associates, the Defendant testified at his 2004 examination that he lost the information when his computer crashed due to a virus, and he had failed to keep any sort of backup of those records.

TRIAL EX. 5, at page 6, line 22 through page 7, line 9.  Additionally, with respect to the supporting documentation for his 2005 and 2006 Year End Business Expense Reports, from which his accountant prepared his 2005 and 2006 tax returns, the Defendant stated that he compiled some of those numbers from reviewing his bank statements and credit card statements, but he also compiled some of them by trying to figure his expenses as accurately as possible, and he was unable to provide records because of the computer virus and his failure, once again, to retain hard copies.  TRIAL EX. 5, at page 7, line 22 through page 9, line 25; page 52, line 15 through page 55, line 4; page 59, line 6 through page 60, line 2.

With respect to his gambling information, the Defendant testified that he did not keep track of all his withdrawals or losses, although his winnings showed up as deposits on his bank statements, and that any records he did attempt to keep were lost, although it didn't really matter since he was losing and was not required to itemize his losses for his tax returns.  TRIAL EX. 5, at page 42, line 19 through page 43, line 6; at page 45, line 21 through page 46, line 11.

At trial, when questioned about his financial records, the Defendant testified that he provided the Plaintiff with everything he had, consisting of records for three bank accounts and six or seven credit cards.  He again testified that he had not supplied the Plaintiff with any orders and/or invoices for Thomas Crown & Associates due to the virus that crashed his computer.  He also testified that he did not have any supporting documentation concerning his business expenses, but that he had produced the Year End Business Expense Reports which were provided to H&R Block for the purpose of preparing his tax returns for 2005 and 2006.  Each Year End Business Expense Report is two pages, listing the Defendant's gross income and business expense totals for the respective

8

year. *See* TRIAL EX. 8; TRIAL EX. 9. When compared to his tax returns for the same years, however, the gross income amounts matched, while the net income amounts differed. *Compare* TRIAL EX. 9 *with* TRIAL EX. 6; TRIAL EX. 8 *with* TRIAL EX. 7. When questioned as to the discrepancies, the Defendant testified that he purposely chose not to include all expenses and underestimated them on his tax returns in an attempt to avoid being audited and "because I could."

With respect to his explanation concerning gambling records, the Defendant testified that when he signed up with gambling websites, the sites opened accounts to be funded and that he could have printed out hard copies for some of his transfers into the accounts, but he chose not to because he could use his credit card and bank statements to keep track of the money sent. When he won or lost money, the Defendant could have printed out confirmations, but he testified that he never printed out anything from any of the websites showing his earnings and losses. He also testified that he did, on occasion, write down if he won but that he did not need to keep records to show his losses. The Defendant also acknowledged that he still gambles on the internet, using the same computer as before, and does not print off hard copies concerning his activities.

The court finds the Defendant's explanation concerning his failure to maintain adequate records insufficient. The Defendant is thirty years old, holds an Associates Degree from Cleveland State Community College, and attended one semester of undergraduate studies at the University of Tennessee. He is articulate and sophisticated, having started an internet marketing business in 2004, and, by his own testimony, he is computer literate. As he testified, the Defendant purposely chose not to claim all of his business expenses in his tax returns in an attempt to avoid an audit by the

9

Internal Revenue Service, and he acknowledged that he did not disclose his gambling enterprises to H&R Block when it prepared his tax returns for 2005 and 2006.

With respect to the business records supplied to the Plaintiff and available to creditors which were introduced into the record at trial, the Defendant's income information from the various sources; i.e., his tax returns for 2005 and 2006, his Year End Business Expense Reports for 2005 and 2006, and his statements and schedules, is inconsistent and does not offer a clear view of his financial condition.

The Defendant's Schedule I, filed on August 24, 2007, evidences monthly income in the amount of $1,379.76, which translates to $16,557.12 per year, compared to expenses of $1,838.91 per month, or $22,066.92 per year, as evidenced by Schedule J, resulting in a negative monthly income of $449.15 or an annual negative income of $5,509.80. COLL. TRIAL EX. 1 (Schedule I; Schedule J). At the same time, however, the Defendant's Statement of Financial Affairs, also filed on August 24, 2007, states that his 2007 income from self-employment is $28,500.00. COLL. TRIAL EX. 1 (Statement of Financial Affairs).

Additionally, these amounts do not coincide with the Defendant's income as reflected in his 2006 tax return and Year End Business Report. His 2006 tax return evidences gross income of $424.00, an adjusted gross income of -$1,513.00, and taxable income of $0.00, while the Schedule C – Profit or Loss from Business attached thereto evidences gross receipts of $75,557.00, gross income of $75,412.00, and net profits of $424.00. TRIAL EX. 7. At the same time, the 2006 Year End Business Expense Report evidences gross income of $75,557.17, as does the Amended

Statement of Financial Affairs.  TRIAL EX. 8; TRIAL EX. 4.[3]  Similarly, the Defendant's 2005 tax return evidences gross income of $52,577.00, an adjusted gross income of $45,125.00, and taxable income of $36,925.00, while the Schedule C – Profit or Loss From Business attached thereto evidences gross receipts of $141,428.00, gross income of $141,010.00, and a net profit of $52,577.00.  TRIAL EX. 6.  On the other hand, the 2005 Year End Business Expense Report, as well as the Amended Statement of Financial Affairs, evidence income for 2005 from self-employment in the amount of $141,418.21.  TRIAL EX. 9; TRIAL EX. 4.

These inconsistencies make it impossible for the Plaintiff and creditors to ascertain the Defendant's true income from the operation of his businesses.  Moreover, the Defendant was unable to produce any business invoices or orders for Thomas Crown & Associates requested by the Plaintiff or any documentation reflecting his gambling winnings and losses, either because he did not retain them or they were lost when his computer crashed due to a virus, and his explanations that he did not need to keep track of his gambling winnings or losses and that he lost records are insufficient to preclude application of § 727(a)(3) in this case.  He also testified that he attempted to get those records from the internet companies with which he deals, but they were unable to give him copies.

While it is a common occurrence for computers to crash and records to be lost, that fact does not excuse the Defendant from retaining backup files and/or hard copies, nor does it provide him

---

[3] The Defendant's Merchant Application with Acacia Funding, dated November 10, 2006, provides yet another set of figures:  gross annual sales of "over $250,000" and average monthly sales of "$20,000-$27,000.00."  TRIAL EX. 10.  When asked where he obtained these numbers, the Defendant testified that although he had never had gross annual sales in that amount, he based his numbers upon asking Acacia what his monthly figures needed to reflect.

with a convenient excuse from providing those records. *See, e.g., Grau Contractors, Inc. v. Pierce (In re Pierce)*, 287 B.R. 457, 463 (Bankr. E.D. Mo. 2002) (holding that the debtor's failure to attempt to reconstruct his records after they were allegedly lost when his computer mysteriously disappeared was unjustified); *Shappell's Inc. v. Perry (In re Perry)*, 252 B.R. 541, 548 (Bankr. M.D. Fla. 2000) (finding that the debtor assertions that his computer was stolen were not credible without additional proof such as an accident report or insurance claim to collaborate). Additionally, in this case, the Defendant testified that his computer issues have been corrected such that he still uses the same computer, although he was unable to recover his lost information.

Based upon the exhibits presented and the Defendant's testimony, the court finds that the Plaintiff has met his initial burden of proof; however, the Defendant has not sufficiently explained his failure to keep, and subsequently provide, adequate records concerning his business transactions and his true financial condition. Accordingly, the Defendant's discharge shall be denied pursuant to § 727(a)(3).

**B**

The Plaintiff also objects to the Defendant's discharge pursuant to § 727(a)(4)(A), which requires proof: (1) that the Debtor made a statement under oath; (2) that was false; (3) he knew that the statement was false when he made it; (4) he fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case. 11 U.S.C. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685. Both affirmative false statements and omissions fall within the scope of § 727(a)(4)(A), *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and they are material if

related to a debtor's business enterprises or transactions, his bankruptcy estate, the discovery of assets, and/or the existence and disposition of property. *Keeney*, 227 F.3d at 686. A debtor's statements and schedules are executed under oath and penalty of perjury, as are statements and testimony given by a debtor at his meeting of creditors, deposition, and/or 2004 examination. *Babb*, 358 B.R. at 355.

"Knowledge that a statement is false can be evidenced by a demonstration that the debtor 'knew the truth, but nonetheless failed to give the information or gave contradictory information.'" *Babb*, 358 B.R. at 355 (quoting *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)). Fraudulent intent is often discerned from a debtor's conduct, demonstrated by material representations or omissions that the debtor knows are false and are likely to create an erroneous impression, as well as reckless disregard or indifference for the truth exhibited by continuing patterns of omissions and/or false statements in his bankruptcy schedules. *Keeney*, 227 F.3d at 685; *Babb*, 358 B.R. at 355. On the other hand, a debtor who mistakenly or inadvertently provides false information or fails to disclose pertinent information and takes steps to amend his schedules to correct them prior to or during a meeting of creditors is not generally thought to possess the requisite fraudulent intent to deny discharge under § 727(a)(4)(A). *Keeney*, 227 F.3d at 686; *Babb*, 358 B.R. at 355-56 (citing *Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 647 (Bankr. E.D. Mich. 1999)).

"Often, the intent issue will turn on the credibility and demeanor of the debtor[.]" *LaRocco v. Smithers (In re Smithers)*, 2006 Bankr. LEXIS 265, at *9 (B.A.P. 6th Cir. Mar. 2, 2006) (quoting *Groman v. Watman (In re Watman)*, 301 F.3d 3, 8 (1st Cir. 2002)).

> [S]ince interested parties should not be required to drag the truth from the debtor, a showing of good faith in a § 727(a)(4)(A) matter will often come down to whether a debtor has abided by this cardinal rule: when in doubt, disclose. For example, a debtor is likely to be forgiven for simply mislabeling an asset, where its existence is still initially disclosed. However, where a debtor only voluntarily discloses information after its existence is uncovered by a third-party (e.g., a trustee or creditor), good faith is unlikely to be found.

*United States Tr. v. Halishak (In re Halishak)*, 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005) (internal citations omitted).

Here, the Plaintiff argues that the Defendant intentionally failed to disclose his gambling losses on his initial Statement of Financial Affairs filed on August 24, 2007, and that he did not file an amendment to the Statement of Financial Affairs until the eve of his 2004 examination and after being directed to by the attorney for the United States Trustee. The Plaintiff further argues that even after the Defendant filed an Amended Statement of Financial Affairs on October 30, 2007, he did not disclose the true nature of his businesses, which consisted of both internet marketing and gambling, and he significantly understated the amounts he lost through gambling since he testified at his 2004 examination that the losses were between $24,000.00 and $60,000.00 and not "at least $10,000.00" as stated.

At trial, the Defendant testified that he reviewed his statements and schedules prior to filing his case on August 24, 2007, and that he understood that he was making a declaration under penalty of perjury that the information contained therein was true and accurate. As for the inconsistent information contained in his Amended Statement of Financial Affairs, the Defendant testified that he overlooked his answer of "at least $10,000.00" in losses and that his estimated gambling losses were actually between $25,000.00 and $40,000.00. With respect to his gambling activities, the

14

Defendant testified that he did not disclose this information to his attorney prior to filing his bankruptcy case, but that his failure to do so was not based upon any intention to hide it. He acknowledged that his gambling only came up after he was questioned about it by the attorney for the United States Trustee at his September 25, 2007 meeting of creditors, but he also insisted that since that time, he had been forthcoming, answering all questions that were asked of him.

The fact that the Defendant failed to disclose his gambling activities to his attorney prior to filing evidences a reckless disregard for the truth, in light of his testimony that he had not disclosed to his tax preparer that a portion of his business stemmed from gambling, that he had been engaged in that activity for approximately two years when he filed for bankruptcy, and that a good portion of his business activities and the funds he obtained from Acacia Funding, American Finance Solutions, and First Funds were used to gamble. TRIAL EX. 5, at page 26, line 19 through 24; page 29, line 6 through 15; page 39, line 8 through page 40, line 20. The Defendant did not disclose this information until he was directed to by the attorney for the United States Trustee, and even then, his gambling losses and the true nature of his businesses were not fully disclosed, which leads the court to the conclusion that the Defendant's omissions were not inadvertent and that the Defendant perpetuated his pattern of omitting information by intentionally failing to fully disclose his gambling activities in the Amended Statement of Financial Affairs filed on October 30, 2007.

Accordingly, the Plaintiff has met his burden of proof that the Defendant knowingly and with reckless disregard for the truth filed statements and schedules under oath containing incomplete, and therefore, false information, and his discharge will be denied pursuant to § 727(a)(4).

# C

Finally, the Plaintiff objects to the Defendant's discharge under § 727(a)(5), alleging that he has not adequately explained a loss or deficiency of assets. The court has "broad power [under § 727(a)(5)] to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996). The initial burden is on the Plaintiff to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question. *Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999). The Plaintiff is not required to prove that the Defendant acted knowingly or fraudulently, as "noticeably lacking from § 727(a)(5) is any element of wrongful intent or, for that matter, any affirmative defenses – § 727(a)(5) simply imposes strict liability." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004).[4]

The burden then shifts to the Defendant to provide a satisfactory explanation of the whereabouts of the assets, *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984), which "'must consist of more than . . . vague, indefinite, and uncorroborated' assertions by the debtor," *D'Agnese*, 86 F.3d at 734 (quoting *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811,

---

[4] "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, [§] 727(a)(5) is one of several Code provisions meant to 'relieve[] creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor.'" *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004) (quoting *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson),* 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)).

814 (7th Cir. 1966)), and must be reasonable and credible, such that the court is convinced that the debtor is acting in good faith. *Fed. Deposit Ins. Corp. v. Hendren (In re Hendren)*, 51 B.R. 781, 788 (Bankr. E.D. Tenn. 1985). Furthermore, the explanation must be supported by "at least some documentation . . . [that is] sufficient to 'eliminate the need for the Court to speculate as to what happened to all the assets.'" *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 364-65 (Bankr. N.D. Ill. 2002) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 956 (Bankr. N.D. Ill. 1995)); *see also NAFCO Fed. Credit Union v. Lawson (In re Lawson)*, 308 B.R. 417, 426 (Bankr. D. Neb. 2004) ("The explanation should be sufficient so the court does not have to speculate as to what happened to the assets or speculate as to the veracity of the explanation.").

The Plaintiff argues that the Defendant's discharge should be denied under § 727(a)(5) because he has failed to offer any explanation as to the dissipation of more than $69,000.00 that the Defendant borrowed from Acacia Funding, American Finance Solutions, and First Funds, aside from his testimony that he suffered undocumented gambling losses between $24,000.00 and $40,000.00. When questioned at his 2004 examination, the Defendant acknowledged that the majority of funds he obtained from those three creditors were spent to fund his gambling activities, although he held some back to pay his rent and living expenses. TRIAL EX. 5, at page 40, lines 12 through 20. The Defendant also testified at trial that he rarely kept track of his earnings and losses, so he could not state an exact amount, but that his losses exceeded his winnings. Finally, he acknowledged that he continued gambling after filing for bankruptcy.

Having already determined that the Defendant's records are insufficient and that he intentionally failed to disclose his gambling activities in his statements and schedules, the court also

17

finds that the Defendant has failed to adequately explain the dissipation of $69,000.00 in loans obtained from his creditors, other than his contention that he lost between $25,000.00 and $40,000.00 of it gambling. He did not offer any information concerning the other $29,000.00 to $44,000.00 received from these loans, other than to state that he used a portion of it to pay his rent.[5] Furthermore, the Defendant acknowledged that he had no documentation to support his explanations. As such, the Plaintiff has met his burden of proof that the Defendant had identifiable assets prior to filing his case that he no longer possesses and that he has not sufficiently explained the dissipation of those assets, and the Defendant is not entitled to a discharge pursuant to § 727(a)(5).

### III

In summary, the court finds that the Plaintiff has met his burden of proof that the Defendant has not produced adequate records, intentionally made false statements under oath, and has not sufficiently explained the dissipation of assets prior to his bankruptcy filing. Accordingly, the Defendant's discharge shall be denied pursuant to 11 U.S.C. § 727(a)(3), (4)(A), and (5).

---

[5] Pursuant to the Defendant's Schedule J filed on August 24, 2007, his rent is $790.00 per month, or $9,480.00 per year, and his monthly expenses of $1,838.91 translate to $22,066.92 per year, which is still less than the unaccounted for loan proceeds. COLL. TRIAL EX. 1 (Schedule J).

A judgment consistent with this Memorandum will be entered.

FILED: August 19, 2008

> BY THE COURT
>
> */s/ RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE